**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2015-0037, <u>Petition of Steven J. Rubenzer, Ph.D., ABPP</u>, the court on September 24, 2015, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. Steven J. Rubenzer, Ph.D., ABPP, appeals an order of the Superior Court (<u>Smukler</u>, J.) denying his motion to intervene in a criminal case. Although he filed his appeal as a petition for original jurisdiction under Rule 11, we treat it as a discretionary appeal under Rule 7. <u>See</u> <u>Sup. Ct. R.</u> 7, 11. As the comments to Rule 3 explain, "[a] trial court order denying a motion by a non-party to intervene in a trial court proceeding is treated as a 'final decision on the merits' for purposes of appeal." <u>Sup. Ct. R.</u> 3 cmt. We affirm.

The pertinent facts are as follows. Dr. Rubenzer was previously employed by MHM Services, Inc., an entity that contracts with the New Hampshire Department of Corrections to provide psychological assessment services. He was terminated from that position on October 10, 2014. Rubenzer was the forensic examiner and only witness at a competency hearing conducted in August 2014 in a criminal case. Rubenzer's counsel represented at oral argument that the criminal case is on-going.

Rubenzer asserts that he was terminated from his employment because of the trial court's competency order in the criminal case, which was issued on September 10, 2014. In finding the defendant competent to stand trial, the court did not rely upon Rubenzer's opinion "that the defendant was malingering," but instead relied upon "the objective information contained in [Rubenzer's] competency evaluation." The court explained that "the adjudication of the defendant's competency was made more problematic" because of Rubenzer's "questionable credibility."

The court's order referred to two issues with Rubenzer's credibility. The first concerned his admission on cross-examination "that he suspected that the defendant was malingering before reviewing any of [the defendant's] mental health records" and that he "placed undue emphasis on subjective information that supported his malingering theory" instead of upon "objective mental health records that did not" support that theory.

The second credibility issue concerned Rubenzer's testimony that "he did not know about the scheduling of the hearing, nor had he received notice [of

it].” The court found that this testimony was “inconsistent with the record.” According to the court, the hearing was originally scheduled to take place on August 8, 2014, but, because Rubenzer failed to submit his evaluation “in sufficient advance time to allow counsel to prepare, the matter had to be rescheduled.” The court found that the rescheduling was done “in open court with Rubenzer present and with full consideration of his calendar.” The court further found that Rubenzer was “asked in open court to call his office to confirm his availability for the August 29, 2014 hearing and he represented that he had done so.”

Rubenzer filed a motion to intervene in the criminal case on approximately November 26, 2014, asking that the court allow him to brief “and provide fuller evidence” with regard to whether he had testified consistently with the record when he testified that he “[had]n’t had a chance to review and prepare” for the competency hearing because he was “not aware that [he] was testifying [that] afternoon.” He asserted that, if he were allowed to present additional evidence, he would explain that, although “he had . . . reserved the date on his calendar,” he had not been reminded about the date as he would have expected. He would explain also that the Office of Forensic Examiner’s calendar did not have the initials “SUP,” which stand for subpoena, next to the case title, which indicated to Rubenzer either that the office had never received a subpoena or that it had failed to record its receipt of the subpoena. He also would explain that the office secretary had not placed the defendant’s chart on top of a bookcase near the door, which would have alerted him that he was due in court that day. Thus, he would clarify that, although he had “general knowledge . . . that the case had been scheduled,” his general knowledge was not “transformed into an awareness of his obligation to appear” because “his required appearance had not been flagged for him the day or two before, or even on the day of the hearing.” Rubenzer argued that the court should allow him to intervene because the court’s determination that he misrepresented facts under oath had “effectively disqualifie[d] [him] as a witness for the State” and, thus, had curtailed his “ability to earn a living.”

On December 19, 2014, the trial court denied Rubenzer’s motion to intervene, stating that he had “no interest in the outcome of this criminal case.” Rubenzer filed the instant appeal in January 2015.

“[T]he right to intervene has been usually determined as a matter of discretion by the Trial Court.” Snyder v. N.H. Savings Bank, 134 N.H. 32, 34 (1991) (quotation omitted). Thus, “[w]e may not overturn the trial court’s decision unless we are persuaded that the court’s exercise of discretion is unsustainable.” Brzica v. Trustees of Dartmouth College, 147 N.H. 443, 446 (2002).

Here, we cannot say that the trial court unsustainably exercised its discretion when it denied Rubenzer’s motion to intervene. Generally, a non-

party has no right to intervene in a criminal case. See United States v. Collins, No. 09-CR-155, 2013 WL 4780927, at *1 (E.D. Wis. Sept. 5, 2013); see also Rullo v. Rullo, 121 N.H. 299, 300 (1981) (explaining that estate, which alleged that criminal defendant had engaged in trespass and negligence, "had no opportunity or right to intervene in the [defendant's] criminal case"). There is no procedural rule that allows for such intervention. Moreover, "[t]he general rule in American jurisprudence is that private citizens lack a judicially cognizable interest in the prosecution of another." Collins, 2013 WL 4780927, at *1; see Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973). "Even crime victims, who enjoy various statutory rights of participation, have no right to intervene . . . in a criminal case." Collins, 2013 WL 4780927, at *1.

Although there are exceptions to the general rule, none of them apply to this case. For instance, courts "sometimes permit the press to intervene in a criminal case where a decision to close criminal proceedings to the public may affect its First Amendment Rights." United States v. Carmichael, 342 F. Supp. 2d 1070, 1072 (M.D. Ala. 2004). Additionally, third parties may be allowed "to intervene in a criminal trial to challenge a request for production of documents on the ground of privilege." Id.

Moreover, although a non-party may have a right to intervene in a civil case, "[c]ourts have uniformly held that the reputational interests of non-party participants, such as witnesses, cannot support the witness' intervention in [such a case] as a party." Floyd v. City of New York, 302 F.R.D. 69, 105 (S.D.N.Y.), aff'd in part and appeal dismissed in part, 770 F.3d 1051 (2d Cir. 2014); see, e.g., Morgan Keegan & Co., Inc. v. Garrett, 848 F. Supp. 2d 691, 693 (S.D. Tex. 2012) (rejecting expert witness's attempt to intervene in a civil case on basis that the court's evidentiary rulings "hurt his reputation," noting that expert had no "legally protectable interest in these proceedings"); Mac Sales Inc. v. E.I. Dupont de Nemours, Civ. A. No. 89-4571, 1995 WL 581790, at *2 (E.D. La. Sept. 29, 1995) (concluding that expert witness could not intervene in underlying action to protect "his reputation, credibility and future financial opportunities" because such interests are "too general and indefinite" to justify intervention and because such interests are protected by the proponent of the witness in the litigation); Calloway v. Westinghouse Elec. Corp., 115 F.R.D. 73, 74 (M.D. Ga. 1987) (holding that a witness could not intervene in civil matter to protect his reputation and "academic credibility" after court allegedly "erroneously impugned his reputation for academic honesty" because such an interest is insufficient to support intervention and because his reputation was adequately protected by the parties in the underlying suit); cf. Brzica, 147 N.H. at 446 (explaining that a trial court should allow a non-party to intervene in a civil case if the non-party "has a right involved in the trial and a direct and apparent interest therein"). Courts have disallowed intervention under these circumstances because to do "otherwise would transform every proceeding that involved a determination of a witness's credibility into an invitation to intervene." Mac Sales, 1995 WL 581790, at *3; see Calloway, 115 F.R.D. at 74.

3

Here, Rubenzer does not contest the trial court's determination that, as a non-party to the criminal proceeding, he had no interest in the outcome of the criminal case and could not intervene in it. Indeed, at oral argument, Rubenzer's attorney conceded that Rubenzer did <u>not</u> seek to intervene in the underlying criminal matter and had no right to do so. Thus, he has failed to establish that, by denying his motion to intervene, the trial court unsustainably exercised its discretion. See <u>Brzica</u>, 147 N.H. at 446.

Although Rubenzer raises constitutional arguments, we decline to address their merits. Rubenzer argues that he was deprived of state and federal constitutional rights to due process when the trial court: (1) found in its September 10, 2014 order that "he lied under oath"; (2) did not allow him to intervene to "present evidence to rebut the trial court's findings"; and (3) denied his motion to intervene without a hearing. We do not address the merits of these arguments because they are either untimely or are not preserved for our review.

To the extent that Rubenzer seeks review of the trial court's September 10, 2014 order, his petition for original jurisdiction, filed in January 2015, is untimely. Because Rule 11 does not contain a filing deadline, we ordinarily consider such petitions to be timely if they were filed within a "reasonable" period of time. <u>Petition of State of N.H. (State v. Fischer)</u>, 152 N.H. 205, 208 (2005). We have "ruled that the reasonable period for filing a petition for writ of certiorari should be determined by the appeal period set out in a substantially analogous statute or situation." <u>Id</u>.

In this case, although the trial court's competency order is not a final order on the merits of the underlying criminal case, arguably, it is final with respect to Rubenzer. <u>See</u> <u>Cohen v. Beneficial Industrial Loan Corp.</u>, 337 U.S. 541, 546 (1949) (holding appealable orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated"). Thus, the situation that is "substantially analogous" to the petition for original jurisdiction in this case is an appeal of a final decision on the merits. Accordingly, Rubenzer's petition is governed by Rule 7, which provides that a notice of appeal must be filed within 30 days of a decision on the merits. <u>Sup. Ct. R.</u> 7. Although a timely-filed post-trial motion stays the running of the appeal period under Rule 7, here, Rubenzer's motion to intervene was not timely as it was filed <u>more than 8 weeks</u> after the court issued its September 10, 2014 order.

Rubenzer has failed to demonstrate that he preserved his remaining due process arguments for our review. Rubenzer did not raise a due process argument in his motion to intervene. In that motion, he recited the common law standard for intervention in a civil case, see <u>Brzica</u>, 147 N.H. at 446, and

4

neither cited nor referred to either the State or Federal Constitution. Rubenzer never referred to "due process," "fundamental fairness," "liberty interest" or any other phrase that might have alerted the trial court that he claimed a constitutional right to intervene. See State v. Ericson, 159 N.H. 379, 386 (2009). Moreover, none of the cases upon which he relied were decided under constitutional law. See U.S. Catholic Conf. v. Abortion Rights Mobilization, 487 U.S. 72, 73-74 (1988) (holding that organizations held in civil contempt for failure to comply with subpoenas duces tecum had standing to challenge the subject matter jurisdiction of the district court to issue the subpoenas); Nisus Corp. v. Perma-Chink Systems, Inc., 497 F.3d 1316, 1321 (Fed. Cir. 2007) (concluding that attorney could not appeal district court's criticism of him because such comments did not constitute a sanction); In re Williams, 156 F.3d 86, 87 (1st Cir. 1998) (dismissing appeal and holding that a trial court's "published findings of attorney misconduct, originally rendered in support of monetary sanctions" were not "independently appealable").

"This case is unlike others in which we have held that [a party] has preserved a constitutional claim even though he never cited a specific constitutional provision in the trial court." Ericson, 159 N.H. at 386; see State v. Demeritt, 148 N.H. 435, 439 (2002); State v. Bruce, 147 N.H. 37, 40 (2001). "For example, in Bruce, . . . the defendant . . . specifically argued that the loss of exculpatory evidence had violated his right to a fair trial." Ericson, 159 N.H. at 386-87; see Bruce, 147 N.H. at 40. Although "the defendant never used the phrase 'due process,' we held that the fact that counsel specifically used the term 'exculpatory evidence' and invoked the right to a fair trial was sufficient to alert the trial judge to the legal basis for his argument and to preserve the issue for appeal." Ericson, 159 N.H. at 387; see Bruce, 147 N.H. at 40. "Similarly, in Demeritt, although defense counsel never cited a specific rule or constitutional provision, we held that he sufficiently alerted the trial court that he was raising a due process argument by asking the court to follow the rule set forth in Doyle v. Ohio, 426 U.S. 610 (1976), a seminal due process case." Ericson, 159 N.H. at 387; see Demeritt, 148 N.H. at 439. "By contrast, in this case, there was nothing to make clear to the trial judge" that due process was the basis of Rubenzer's motion to intervene. Ericson, 159 N.H. at 387. "In light of this record, we hold that he has failed to preserve either a state or a federal constitutional claim" with regard to the denial of his motion to intervene. Id.

We likewise conclude that Rubenzer did not preserve his argument that the trial court violated his constitutional rights to due process by deciding his motion on the pleadings. To the extent that Rubenzer believed that this was error, it was incumbent upon him to file a motion for reconsideration. The trial court must have had the opportunity to consider any issues asserted by Rubenzer on appeal; thus, to satisfy this preservation requirement, any issues that could not have been presented to the trial court before its decision must be presented to it in a motion for reconsideration. See LaMontagne Builders v.

<u>Bowman Brook Purchase Group</u>, 150 N.H. 270, 274 (2003); <u>N.H. Dep't of Corrections v. Butland</u>, 147 N.H. 676, 679 (2002).  The record on appeal, however, does not demonstrate that Rubenzer filed such a motion.  <u>See</u> <u>Bean v. Red Oak Prop. Mgmt.</u>, 151 N.H. 248, 250 (2004).

For all of the above reasons, therefore, we affirm the trial court's denial of Rubenzer's motion to intervene in the subject criminal case.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,**
**Clerk**

6