Rockingham
No. 81-224

### THE STATE OF NEW HAMPSHIRE

v.

### EDWARD PUGLIESE

December 30, 1982

*Gregory H. Smith,* attorney general (*Brian T. Tucker,* assistant attorney general, on the brief and orally), for the State.

*Upton, Sanders & Smith,* of Concord (*Gilbert Upton* and *Russell F. Hilliard* on the brief, and *Mr. Upton* orally), for the defendant.

BROCK, J.   The defendant appeals from his conviction of negligent homicide, RSA 630:3, I. He was previously acquitted of manslaughter. The issues on appeal are whether the defendant's negligent homicide conviction must be reversed because the trial court instructed the jury that negligence could be proven by evidence of purposeful, knowing, or reckless behavior, and whether the trial court's refusal to poll the jury during the trial, after some allegedly prejudicial newspaper articles had been brought to the court's attention, constituted reversible error. Finding no merit to the defendant's appeal, we affirm.

This is the third time that the defendant has been tried on charges arising out of the 1977 death of Denis Champagne. The first trial on the charge of manslaughter or the lesser-included offense of negligent homicide resulted in a hung jury and the trial court's declaration of a mistrial. The second trial on the same charges resulted in his conviction for negligent homicide. On appeal, however, this court reversed the conviction on the ground that the mistrial declared in the first trial had not been based on "manifest necessity," and thus his retrial on the charge of manslaughter constituted double jeopardy. *State v. Pugliese,* 120 N.H. 728, 730, 422 A.2d 1319, 1321 (1980). We remanded for a new trial on the charge of negligent homicide only. *Id.* at 732, 422 A.2d at 1322.

The conviction resulting from his third trial is the subject of this appeal. At the request of the State, and over the defendant's objection and exception, the Superior Court (*Contas,* J.) instructed

the jury, pursuant to RSA 626:2, III, that "negligence," the mental state required in the crime of negligent homicide, RSA 630:3, I, is established even if the jury finds that the defendant acted *purposely, knowingly, or recklessly.*

The defendant contends that, because the jury in the second trial must have determined that he had not acted "recklessly" when it acquitted him of manslaughter (RSA 630:2, I), the State was barred, in the subsequent prosecution for negligent homicide, from relitigating the issue of intent underlying the purposeful, knowing, or reckless mental states discussed in RSA 626:2, III. The defendant maintains that while RSA 626:2, III, may be an otherwise proper legal directive, the doctrine of collateral estoppel barred its use in his case.

■■ "Collateral estoppel, which is an extension of the doctrine of res judicata, bars relitigation of factual issues which have already been determined . . . ." *State v. Proulx,* 110 N.H. 187, 189, 263 A.2d 673, 675 (1970); *see State v. Hastings,* 121 N.H. 465, 467, 430 A.2d 1131, 1132 (1981); *see also Scheele v. Village District of Eidelweiss,* 122 N.H. 1015, 1019, 453 A.2d 1281, 1284 (1982). Like the doctrine of res judicata, it "has the dual purpose of protecting litigants from the burden of relitigating an identical issue . . . and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 (1979); *see In re Robert C.,* 120 N.H. 221, 224, 412 A.2d 1037, 1039 (1980).

■■ "Collateral estoppel applies equally in civil and criminal proceedings." *State v. Kowal,* 116 N.H. 699, 700, 366 A.2d 877, 878 (1976). Its application in criminal cases is constitutionally required as part of the fifth amendment guarantee against double jeopardy. *Ashe v. Swenson,* 397 U.S. 436, 445–46 (1970). The reasoning behind this constitutionally-based application of collateral estoppel is that it is fundamentally unfair to force a defendant a second time "to defend . . . against charges or factual allegations which he overcame in the earlier trial." *United States v. Keller,* 624 F.2d 1154, 1159 (3d Cir. 1980) (quoting *Wingate v. Wainwright,* 464 F.2d 209, 214 (5th Cir. 1972)).

We must therefore determine whether the court's instruction to the jury raised a previously litigated question of fact, thereby unfairly forcing the defendant to relitigate an issue which had already been decided in his favor. The challenged jury instruction is as follows:

"As I have stated, the third element the State must prove beyond a reasonable doubt is that the defendant acted

negligently. A person acts negligently when he fails to become aware of a substantial, which is important, or essential and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature or degree that his failure to become aware of it constitutes a gross deviation, which is a marked departure from the norms of behavior, from the conduct that a reasonable person would observe in the situation.

. . . Further, when the law provides that negligence suffices to establish an element of an offense such element is also established if the State proves beyond a reasonable doubt that a person acted purposely, knowingly, or recklessly."

The defendant alleges that this jury instruction allowed the jury to convict him either on the basis of mere negligent behavior *or* on the basis of conduct involving a purposeful, knowing, or reckless state of mind, for which he had already been acquitted. He argues that this unfairly forced him to litigate issues previously determined in his favor.

We note that the questioned jury instruction did not alter the fact that the defendant was subject only to a jury *finding* of negligence. The instruction stated that the element of negligence *could* be satisfied by evidence of higher culpable mental states. The instruction did not make the existence of these mental states a prerequisite to a finding of negligence, and the jury may have reached its decision without having considered the issue of his intent.

██ ██ Nevertheless, we decline to dispose of the defendant's claim on this purely formalistic level. The heart of the protection afforded criminal defendants by the doctrine of collateral estoppel is that they not be forced to relitigate decided issues. If we view the challenged jury instruction standing alone, it is clear that it may in fact have permitted the jury to convict the defendant of negligent homicide on the basis of higher culpable mental states whose *absence* had been impliedly determined at his previous trial for manslaughter. Viewed in this context, it must be conceded that the trial judge's instruction to the jury was improper under the strictures of the collateral estoppel doctrine.

██ Since the instruction was improper, we must proceed to determine whether the defendant was prejudiced thereby and unfairly forced to relitigate a previously-decided fact. For the

defendant's conviction to stand, any error of constitutional dimension must be shown to be harmless beyond a reasonable doubt. *State v. Staples*, 121 N.H. 959, 962, 437 A.2d 266, 267 (1981); *Chapman v. California*, 386 U.S. 18, 24 (1967); *see Wingate v. Wainwright*, 464 F.2d at 214.

The defendant maintains he was prejudiced because the jury instruction *forced* him to relitigate issues raised by the higher, intentional mental states underlying purposeful, knowing, or reckless behavior. The fact that the jury instruction was given at the close of all the evidence aside, a review of the trial transcript reveals that the defendant himself first raised the issue of intent, *see State v. Perron*, 122 N.H. 941, 949, 454 A.2d 422, 426 (1982), when he raised the justification defense of self-defense in his trial for negligent homicide. *See* RSA 627:4, II(a) (Supp. 1981). At the outset of the trial, defense counsel requested that the trial court allow the defendant to assert a plea of self-defense, stating: "This case has been tried twice, both times the only defense is self-defense and really that is the only defense that will be asserted." This request was granted.

■ A defendant asserting the defense of self-defense to a homicide charge tacitly admits the killing was intentional but claims it was justified or excused for some reason as defined by our Criminal Code. *See* RSA 627:4, II(a) (Supp. 1981). Here, after the defendant claimed self-defense, the trial judge placed a heavy burden on the State to disprove it. He instructed the jury that:

> "The defendant Mr. Pugliese has raised the issue of self-defense. As a result of that, the burden is on the State to disprove that the defendant acted in self-defense. And they must prove that beyond a reasonable doubt."

Clearly, in light of the self-defense claim, the State was entitled, and even required, to present rebuttal evidence. *See State v. Sullivan*, 121 N.H. 301, 304, 428 A.2d 1247, 1249 (1981); *Rullo v. Rullo*, 121 N.H. 299, 300, 428 A.2d 1245, 1246–47 (1981). We note, moreover, that the defendant failed to object during trial to the introduction of extensive evidence going to the intent underlying his conduct, including the testimony of four witnesses who stated they had heard the defendant threaten to kill the victim. The defendant objected only to the jury instruction which was designed to help the jury analyze evidence which had come in without objection during five days of trial. If the defendant had wanted to limit his trial to the sole issue of his negligence, he should have objected to the admission of evidence regarding his intent in the State's case-in-chief. His

failure to do so, *see State v. Niquette*, 122 N.H. 870, 873, 451 A.2d 1292, 1294 (1982); *State v. Sullivan*, 121 N.H. at 304, 428 A.2d at 1249, undermines his claim that the jury instruction in fact harmed him in any way.

■ For all the foregoing reasons, we hold that the challenged jury instruction neither prejudiced the defendant nor unfairly forced him to litigate issues previously determined in his favor. Any error committed by the trial court was harmless beyond a reasonable doubt.

■■ The defendant further alleges that the challenged instruction violated his right to avoid being twice placed in jeopardy. *See* N.H. CONST. pt. I, art. 16; U.S. CONST. amends. V & XIV. The defendant, however, was not subject to double jeopardy because he was never in any danger of being reprosecuted for manslaughter. "Double jeopardy only prohibits reprosecution where the second offense charged is the same as the first, both in law and in fact." *State v. Heinz*, 119 N.H. 717, 720, 407 A.2d 814, 816 (1979). The greatest offense for which the defendant could be convicted was negligent homicide, and the jury was so instructed.

■ We next address the defendant's challenge to the trial court's refusal to poll the jury during the trial after allegedly prejudicial newspaper articles, which referred to the prior proceedings in the defendant's case, were brought to the court's attention. It is well settled that the decision to poll the jury is one for the trial court in the exercise of its sound discretion and that absent an abuse of discretion, its decision will not be overturned by this court. *State v. Danskin*, 122 N.H. 817, 819, 451 A.2d 396, 397–98 (1982); *State v. Donovan*, 120 N.H. 603, 606, 419 A.2d 1102, 1104 (1980).

■■ In this case, the trial court instructed the jury to base its verdict solely on the evidence presented at trial. As its final instruction, the court emphasized that the jury was to disregard any information about prior proceedings involving the defendant, about which they might have read or heard outside the courtroom. The court must assume that jurors will follow its instructions. *State v. Preston*, 121 N.H. 147, 150, 427 A.2d 32, 34 (1981); *State v. Novosel*, 120 N.H. 176, 186, 412 A.2d 739, 746 (1980). Further, no evidence was offered by the defendant's counsel to show that any member of the jury had read the articles and that this had resulted in deprivation of the defendant's right to a fair trial. *See State v. Donovan*, 120 N.H. at 606, 419 A.2d at 1104–05. We therefore

1148

conclude that there was no abuse of discretion by the trial judge when he refused to poll the jury.

*Affirmed.*

BOIS, J., concurred in the result only; the others concurred.

BOIS, J., concurring: In view of my dissent in *State v. Pugliese*, 120 N.H. 728, 422 A.2d 1319 (1980), I concur in the result reached.